# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

| | | |
|---|---|---|
| CAMARA SMITH, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | NO. 3:06-00829 |
| | ) | JUDGE HAYNES |
| v. | ) | |
| | ) | |
| THE CHEESECAKE FACTORY | ) | |
| RESTAURANTS, INC., et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM

Plaintiffs Camara Smith, Annie Underwood, Stephanie Coleman-Smith, Carly Taylor, Antawyone Owens, Seth Hines, Clare Law, Jennifer Ruffin, Erick Ruffin, Jolene Hostal, Misty Neal, Stephanie Yoakum, David Peltz, Mary Caruso, and Naomi Greenberg filed this action under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, et seq., and Title VII of the Civil Rights Act of 1964, on behalf of themselves and all others similarly situated, against the Defendants: The Cheesecake Factory Restaurants, Inc. ("CFRI"), The Cheesecake Factory Incorporated ("TCF"), David Overton, Peter J. D'Amelio, and Jennifer G. Bispo. Plaintiffs allege, in essence, that Defendants' policies, practices and procedures violated the minimum wage, overtime and tip credit provisions of the FLSA. Specifically, Plaintiffs contend that Defendants eliminated or limited servers' overtime hours, caused servers to work "off the clock" without compensation, directly or indirectly deducted wages and/or tips of servers for uniforms, uniform cleaning, cash shortages, and "tools of the trade," and paid overtime at a rate of less than one and one half times the regular rate of pay.

-1-

Before the Court are the following motions: (1) Defendant CFRI's motion to dismiss or stay to compel arbitration (Docket Entry No. 23); (2) Plaintiffs' motion to strike Jennifer Bispo's Declaration (Docket Entry No. 88); (3) Defendants TCF's, Overton's, D'Amelio's, and Bispo's motion to dismiss (Docket Entry No. 66); and (4) Defendants TCF's, Overton's, D'Amelio's, and Bispo's supplemental motion to dismiss (Docket Entry No. 98).

In the various motions to dismiss, Defendants argue that Plaintiffs' are bound by the terms of their employment with CFRI that included an arbitration agreement, and as such the Court lacks subject matter jurisdiction and this action should be dismissed or stayed pending arbitration. Defendants further argue that this Court lacks personal jurisdiction over Defendants TCF, Overton, D'Amelio, and Bispo, and therefore Plaintiffs' claims against those Defendants should be dismissed. Finally, Defendants argue that Defendants TCF, Overton, D'Amelio, and Bispo cannot be considered Plaintiffs' "employer" under either the FLSA or Title VII, and thus Plaintiffs have failed to state a claim against those Defendants.

In response to these motions, Plaintiffs contend that the arbitration clause is unenforceable for numerous reasons, that Defendants have enough contacts with the State of Tennessee to justify personal jurisdiction, and that Defendants are "employers" under the FLSA and Title VII using expansive interpretations of those statutes.

For the reasons set forth below, the Court concludes that Plaintiffs are bound by the arbitration clause for all of their employment related claims against CFRI. The Court further concludes that Defendants TCF, Overton, D'Amelio, and Bispo are not Plaintiffs' "employers" under the FLSA or Title VII. As such, Defendants' motions to dismiss should be granted, and Plaintiffs may proceed to arbitration for their claims against CFRI.

-2-

## A. ANALYSIS OF THE MOTION TO DISMISS

Both Plaintiffs and Defendants have presented affidavits and other evidence in support and opposition to the motions to dismiss. These include numerous declarations from corporate officers of the Defendants, the declarations of Defendants themselves, and declarations of Plaintiffs. (See, inter alia, Docket Entry Nos. 68-71, 77-82).

On consideration of a motion to dismiss, the Court determines whether there are any circumstances in which the plaintiffs can state a claim for relief, Scheuer v. Rhodes, 416 U.S. 232, 236 (1974), under a notice pleading standard pursuant to Fed. R. Civ. P. 8. To evaluate the legal sufficiency of a complaint, the Sixth Circuit observed that "our standard of review requires more than bare essentials of legal conclusions." Columbia Natural Resources, Inc. v. Tatum, 58 F.3d 1101, 1109 (6th Cir. 1995), cert. denied, 116 S.Ct. 1041 (1996). As the Sixth Circuit has stated, the Court "need not accept as true legal conclusions or unwarranted factual inferences." Morgan v. Church's Fried Chicken, 929 F.2d 10, 12 (6th Cir. 1987).

As the Sixth Circuit stated, "[a] motion under rule 12(b)(6) is directed solely to a complaint itself...." Sims v. Mercy Hosp., 451 F.2d 171, 173 (6th Cir. 1971). Thus, "when deciding a motion to dismiss a court may consider only matters properly a part of the complaint or pleadings." Armengau v. Cline, 7 Fed. Appx. 336, 343 (6th Cir. 2001). The Sixth Circuit has taken a "liberal view of what matters fall within the pleadings for purposes of Rule 12(b)(6)." Id. at 344. "Documents attached to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to the plaintiff's claim." Weiner v. Klais & Co., Inc., 108 F.3d 86, 89 (6th Cir. 1997) (adopting Venture Assocs. Corp. v. Zenith Data Sys. Corp., 987 F.2d 429, 431 (7th Cir. 1993)). The court may also consider public records,

matters of which a court may take judicial notice, and letter decisions of governmental agencies. Jackson v. City of Columbus, 194 F.3d 737, 745 (6th Cir. 1997) (citing Nieman v. NLO, Inc., 108 F.3d 1546, 1554 (6th Cir. 1997) (public records); Lovelace v. Software Spectrum, Inc., 78 F.3d 1015, 1018 (5th Cir. 1996) (judicial notice); Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1197 (3d Cir. 1993) (letter decisions of governmental agencies)).

Applying these principles here, the Court concludes that the affidavits and other documents attached to the parties' memoranda in support and opposition to Defendants' motions to dismiss do not fall within the pleadings for purposes of Fed. R. Civ. P. 12(b)(6). The documents at issue, the arbitration agreements allegedly executed by the Plaintiffs and the Plaintiffs' and Defendants' affidavits, are not mentioned in Plaintiffs' Second Amended Complaint, and they are not central to Plaintiffs' claims under the FLSA. In addition, the documents do not fall under the other categories of documents that are considered part of the pleadings.

Under Sixth Circuit precedent, in considering a motion to dismiss, "if affidavits are filed with the district court, the court must proceed under Rule 56 unless the court decides to exclude the affidavits." Dayco Corp. v. Goodyear Tire & Rubber Co., 523 F.2d 389, 392 (6th Cir. 1975). Accord Shelby County Health Care Corp. v. Southern Council of Indus. Workers Health & Welfare Trust, 203 F.3d 926, 931 (6th Cir. 2000). "When matters outside the pleadings are considered in ruling on a Rule 12(b)(6) motion, the parties must be given a reasonable opportunity to present all material made pertinent to the motion under Rule 56." Fugarino v. Hartford Life & Acc. Ins. Co., 969 F.2d 178, 182 (6th Cir. 1992).

Further, Rule 12(b) provides, in pertinent part, as follows:

-4-

> If, on a motion asserting the defense numbered (6) to dismiss for failure of the
> pleading to state a claim upon which relief can be granted, matters outside the
> pleading are presented to and not excluded by the court, the motion shall be
> treated as one for summary judgment and disposed of as provided in Rule 56, and
> all parties shall be given reasonable opportunity to present all material made
> pertinent to such a motion by Rule 56.

Fed. R. Civ. P. 12(b).

Under Sixth Circuit precedent, where the materials submitted by a party fall outside the

pleadings, "a party cannot raise for the first time on appeal an argument that she was surprised by

the conversion of the motion to dismiss into a motion for summary judgment when the party was

aware that materials outside the pleading had been submitted to the court before the court granted

the motion." Song v. City of Elyria, 985 F.2d 840, 842 (6th Cir. 1993) (citing Wright v.

Holbrook, 794 F.2d 1152, 1156 (6th Cir. 1986)).   The Sixth Circuit reasoned as follows:

> The plaintiffs cannot claim that they were surprised by the affidavits they submitted,
> nor can they claim that they were surprised by the attachment to the defendants'
> Memorandum in Support of Motion to Dismiss. The plaintiffs moved to dismiss on
> February 6, 1991. The district court did not grant the motion to dismiss until August
> 13, 1991. The plaintiffs had over six months to submit their own additional materials
> or to raise the issue that they now raise before this court.

Id. (emphasis added).  Cf. Fugarino, 969 F.2d at 182 (holding that the plaintiffs had a reasonable

opportunity to respond to matters outside the pleadings where the plaintiffs failed to respond to

the defendants' evidence).

Here, following Song, the Court concludes that, as required by Fed. R. Civ. P. 12(b),

Defendants' motions to dismiss should be converted to motions for summary judgment under

Fed. R. Civ. P. 56.  On October 19, 2006, Defendant CFRI filed its motion to dismiss and its

accompanying memorandum and attachments thereto.  (Docket Entry No. 23).  On December 1,

2006, Defendants TCF, Overton, D'Amelio, and Bispo filed their first motion to dismiss and

-5-

their accompanying memorandum and attachments thereto (Docket Entry No. 66). On December 28 & 29, 2006, Plaintiffs filed their responses to those motions where they specifically addressed the issues raised by the Defendants and submitted additional affidavits in support of their arguments. Later, on April 2, 2007, Defendants filed a supplemental motion to dismiss in response to the filing of the Second Amended Complaint, (Docket Entry No. 98), and Plaintiffs responded to that motion. The Court concludes that neither Plaintiffs nor Defendants can be surprised by the affidavits they submitted because the parties submitted additional responsive materials in relation to Defendants' various motions. Song, 985 F.2d at 842.

Thus, because both parties rely on proof that falls outside the pleadings for purposes of Rule 12(b)(6), the Court converts Defendants' motions to dismiss into motions for summary judgment. See Morton v. ICI Acrylics, Inc., 69 F. Supp. 2d 1038, 1041 (W.D. Tenn. 1999).

## B. FINDINGS OF FACT[1]

CFRI owns and operates a chain of restaurants across the United States, including one restaurant in Nashville, Tennessee. TCF is incorporated in Delaware with its principal place of business located in California. (Docket Entry No. 69, Gardner Declaration at ¶ 3). TCF is a publicly-traded company, and owns several separate and distinct subsidiary companies, including CFRI. Id. CFRI and TCF share a number of corporate officers, including Defendants Overton

---

[1] Upon a motion for summary judgment, the factual contentions are viewed in the light most favorable to the party opposing the motion for summary judgment. Duchon v. Cajon Co., 791 F.2d 43, 46 (6th Cir. 1986). As will be discussed infra, under Supreme Court holdings, upon the filing of a motion for summary judgment, the opposing party must come forth with sufficient evidence to withstand a motion for a directed verdict. Anderson v. Liberty Lobby, 477 U.S. 242, 247-52 (1986). Under the applicable law, the Court concludes that there are not any material factual disputes as to whether there was a valid arbitration agreement between the parties. Thus, this section constitutes findings of fact under Fed. R. Civ. P. 56(d).

-6-

and D'Amelio, while Defendant Bispo serves as Vice President - Staff Relations for TCF. (Docket Entry No. 67 at p. 3).

The named Plaintiffs, Stephanie Coleman-Smith, Antawyone Owens, Camara Smith, Carly Taylor and Annie Underwood, as well as all of the other individuals who submitted declarations in support of Plaintiffs' Motion for Expedited Court-Supervised Notice (namely, Alexandra Dame, Lisa Davis, Naomi Greenberg, Seth Hines, Clare Law, and Natalie Williams), are all current or former employees of CFRI who had signed a "Handbook Receipt & Confidentiality Agreement" (the "Agreement") at the beginning of their employment. A clause of that agreement, initialed by each employee, provides as follows:

> I recognize that differences may arise between me and the Company during, or following, my employment with the Company. I agree to participate in impartial dispute-resolution proceedings as a condition of and as consideration for the offer of employment by the Company. If I, or the Company, determine that the Company's internal procedures for handling claims (including but not limited to, reporting claims to my manager, the Area Director of Operations, the CARELINE, and/or the Staff Relations Department), have not resulted in a mutually acceptable resolution of disputes between me and the Company, I agree to participate in arbitration proceedings.

(Docket Entry No. 25-2, Exhibit A). The Agreement contains no other provisions relating to arbitration.

## C. CONCLUSIONS OF LAW

As a preliminary matter, the Court notes that Defendants' motion to strike Jennifer Bispo's Declaration (Docket Entry No. 88) should be denied as untimely. In any event, the Court does not rely on the Declaration that Plaintiffs take issue with in that motion, and thus the outcome of that motion has no bearing on the Court's conclusions below.

"The very reason of the summary judgment procedure is to pierce the pleadings and to

-7-

assess the proof in order to see whether there is a genuine need for trial." Advisory Committee

Notes on Rule 56, Federal Civil Judicial Procedure and Rules (West Ed. 1989). Moreover,

"district courts are widely acknowledged to possess the power to enter summary judgment <u>sua</u>

<u>sponte</u>, so long as the opposing party was on notice that she had to come forward with all of her

evidence." <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 326 (1986). <u>Accord Routman v. Automatic</u>

<u>Data Processing, Inc.</u>, 873 F.2d 970, 971 (6th Cir. 1989).

In <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242 (1986), the United States Supreme

Court explained the nature of a motion for summary judgment:

> Rule 56(c) of the Federal Rules of Civil Procedure provides that summary
> judgment "shall be rendered forthwith if the pleadings, depositions, answers to
> interrogatories, and admissions on file, together with the affidavits, if any, show
> that there is no genuine issue as to any material fact and that the moving party is
> entitled to a judgment as a matter of law." By its very terms, this standard
> provides that the mere existence of <u>some</u> alleged factual dispute between the
> parties will not defeat an otherwise properly supported motion for summary
> judgment; the requirement is that there be no <u>genuine</u> issue of <u>material</u> fact.

> <u>As to materiality, the substantive law will identify which facts are material. Only
> disputes over facts that might affect the outcome of the suit under the governing
> law will properly preclude the entry of summary judgment.</u> Factual disputes that
> are irrelevant or unnecessary will not be counted.

477 U.S. at 247-48 (emphasis in the original and added in part). Earlier the Supreme Court

defined a material fact for Rule 56 purposes as "[w]here the record taken as a whole could not

lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'"

<u>Matsushita Electrical Industrial Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986) (citations

omitted).

A motion for summary judgment is to be considered after adequate time for discovery.

<u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 326 (1986). Where there has been a reasonable

-8-

opportunity for discovery, the party opposing the motion must make an affirmative showing of the need for additional discovery after the filing of a motion for summary judgment. <u>Emmons v. McLaughlin</u>, 874 F.2d 351, 355-57 (6th Cir. 1989). <u>But see</u> <u>Routman v. Automatic Data Processing, Inc.</u>, 873 F.2d 970, 971 (6th Cir. 1989).

There is a certain framework in considering a summary judgment motion as to the required showing of the respective parties as described by the Court in <u>Celotex</u>:

> Of course, a party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact. . . . [W]e find no express or implied requirement in Rule 56 that the moving party support its motion with affidavits or other similar materials negating the opponent's claim.

<u>Celotex</u>, 477 U.S. at 323 (emphasis deleted).

As the Court of Appeals explained, "[t]he moving party bears the burden of satisfying Rule 56(c) standards." <u>Martin v. Kelley</u>, 803 F.2d 236, 239, n. 4 (6th Cir. 1986). The moving party's burden is to show "clearly and convincingly" the absence of any genuine issues of material fact. <u>Sims v. Memphis Processors, Inc.</u>, 926 F.2d 524, 526 (6th Cir. 1991) (quoting <u>Kochins v. Linden-Alimak, Inc.</u>, 799 F.2d 1128, 1133 (6th Cir. 1986)). "So long as the movant has met its initial burden of 'demonstrating the absence of a genuine issue of material fact,' the nonmoving party then 'must set forth specific facts showing that there is a genuine issue for trial.'" <u>Emmons v. McLaughlin</u>, 874 F.2d 351, 353 (6th Cir. 1989) (quoting <u>Celotex</u> and Rule 56(e)).

Once the moving party meets its initial burden, the Court of Appeals warned that "[t]he respondent must adduce more than a scintilla of evidence to overcome the motion [and]. . . must

-9-

'present affirmative evidence in order to defeat a properly supported motion for summary judgment.'" Street v. J.C. Bradford & Co., 886 F.2d 1472, 1479 (6th Cir. 1989) (quoting Liberty Lobby, 477 U.S. at 257). Moreover, the Court of Appeals explained:

> The respondent must "do more than simply show that there is some metaphysical doubt as to the material facts." Further, "[w]here the record taken as a whole could not lead a rational trier of fact to find" for the respondent, the motion should be granted. The trial court has at least some discretion to determine whether the respondent's claim is "implausible."

Street, 886 F.2d at 1480 (cites omitted). See also Hutt v. Gibson Fiber Glass Products, No. 89-5731 (6th Cir. filed September 19, 1990) ("A court deciding a motion for summary judgment must determine 'whether the evidence presents a sufficient disagreement to require a submission to the jury or whether it is so one-sided that one party must prevail as a matter of law.'" (quoting Liberty Lobby, 477 U.S. at 251-52)).

If both parties make their respective showings, the Court then determines if the material factual dispute is genuine, applying the governing law.

> More important for present purposes, summary judgment will not lie if the dispute about a material fact is 'genuine' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.
>
> * * *
>
> Progressing to the specific issue in this case, we are convinced that the inquiry involved in a ruling on a motion for summary judgment or for a directed verdict necessarily implicates the substantive evidentiary standard of proof that would apply at the trial on the merits. If the defendant in a run-of-the-mill civil case moves for summary judgment or for a directed verdict based on the lack of proof of a material fact, the judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented. The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff. The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could

-10-

find by a preponderance of the evidence that the plaintiff is entitled to a verdict --
'whether there is [evidence] upon which a jury can properly proceed to find a
verdict for the party producing it, upon whom the onus of proof is imposed.'

Liberty Lobby, 477 U.S. at 248, 252 (citation omitted and emphasis added).

It is likewise true that:

[I]n ruling on a motion for summary judgment, the court must construe the
evidence in its most favorable light in favor of the party opposing the motion and
against the movant. Further, the papers supporting the movant are closely
scrutinized, whereas the opponent's are indulgently treated. It has been stated
that: 'The purpose of the hearing on the motion for such a judgment is not to
resolve factual issues. It is to determine whether there is any genuine issue of
material fact in dispute. . . .'

Bohn Aluminum & Brass Corp. v. Storm King Corp., 303 F.2d 425, 427 (6th Cir. 1962) (citation

omitted). As the Court of Appeals stated, "[a]ll facts and inferences to be drawn therefrom must

be read in a light most favorable to the party opposing the motion." Duchon v. Cajon Company,

791 F.2d 43, 46 (6th Cir. 1986) app. 840 F.2d 16 (6th Cir. 1988) (unpublished opinion) (citation

omitted).

The Court of Appeals further explained the District Court's role in evaluating the proof

on a summary judgment motion:

A district court is not required to speculate on which portion of the record the
nonmoving party relies, nor is it obligated to wade through and search the entire
record for some specific facts that might support the nonmoving party's claim.
Rule 56 contemplates a limited marshalling of evidence by the nonmoving party
sufficient to establishing a genuine issue of material fact for trial. This
marshalling of evidence, however, does not require the nonmoving party to
"designate" facts by citing specific page numbers. Designate means simply "to
point out the location of." Webster's Third New InterNational Dictionary (1986).

Of course, the designated portions of the record must be presented with enough
specificity that the district court can readily identify the facts upon which the
nonmoving party relies; but that need for specificity must be balanced against a
party's need to be fairly apprised of how much specificity the district court

-11-

requires. This notice can be adequately accomplished through a local court rule or a pretrial order.

InterRoyal Corp. v. Sponseller, 889 F.2d 108, 111 (6th Cir. 1989) cert. denied 494 U.S. 1091 (1990). Here, the parties have given some references to the proof upon which they rely. Local Rules 56.01(b)-(d) require a showing of undisputed and disputed facts.

In Street, the Court of Appeals discussed the trilogy of leading Supreme Court decisions, and other authorities on summary judgment and synthesized ten rules in the "new era" on summary judgment motions

1. Complex cases are not necessarily inappropriate for summary judgment.

2. Cases involving state of mind issues are not necessarily inappropriate for summary judgment.

3. The movant must meet the initial burden of showing 'the absence of a genuine issue of material fact' as to an essential element of the non-movant's case.

4. This burden may be met by pointing out to the court that the respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case.

5. A court should apply a federal directed verdict standard in ruling on a motion for summary judgment. The inquiry on a summary judgment motion or a directed verdict motion is the same: 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that the party must prevail as a matter of law.'

6. As on federal directed verdict motions, the 'scintilla rule' applies, i.e., the respondent must adduce more than a scintilla of evidence to overcome the motion.

7. The substantive law governing the case will determine what issues of fact are material, and any heightened burden of proof required by the substantive law for an element of the respondent's case, such as proof by clear and convincing evidence, must be satisfied by the respondent.

8. The respondent cannot rely on the hope that the trier of fact will disbelieve

-12-

the movant's denial of a disputed fact, but must present affirmative evidence in order to defeat a properly supported motion for summary judgment.

9.      The trial court no longer has the duty to search the entire record to establish that it is bereft of a genuine issue of material fact.

10.     The trial court has more discretion than in the 'old era' in evaluating the respondent's evidence. The respondent must 'do more than simply show that there is some metaphysical doubt as to the material facts.' Further, '[w]here the record taken as a whole could not lead a rational trier of fact to find' for the respondent, the motion should be granted. The trial court has at least some discretion to determine whether the respondent's claim is implausible.

Street, 886 F.2d at 1479-80.

The Court has distilled from these collective holdings four issues that are to be addressed upon a motion for summary judgment: (1) has the moving party "clearly and convincingly" established the absence of material facts?; (2) if so, does the plaintiff present sufficient facts to establish all the elements of the asserted claim or defense?; (3) if factual support is presented by the nonmoving party, are those facts sufficiently plausible to support a jury verdict or judgment under the applicable law?; and (4) are there any genuine factual issues with respect to those material facts under the governing law?

## 1.  FAA

In the FAA, Congress established a policy to recognize and enforce arbitration agreements. 9 U.S.C. § 4. As the Supreme Court stated:

The Arbitration Act establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability.

Moses H. Cone Memorial v. Mercury Const. Corp., 460 U.S. 1, 24-25 (1983) (footnote omitted) (emphasis added).

-13-

The Supreme Court has also noted that a strong presumption exists to enforce arbitration provisions.

> Bremen and Scherk establish a strong presumption in favor of enforcement of freely negotiated contractual choice-of-forum provisions. Here, as in Scherk, that presumption is reinforced by the emphatic federal policy in favor of arbitral dispute resolution.

Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 631 (1985).

The Supreme Court has honored this Congressional policy by requiring arbitration where the parties agreed to do so, notwithstanding a party's independent right of action under a federal statute. In Dean Wittier Reynolds, Inc. v. Byrd, 470 U.S. 213, 218-19 (1985), the Supreme Court held that a plaintiff's state law claims in a diversity action were subject to compulsory arbitration. Even if there are non-arbitrable claims in the same action with arbitrable claims, the Court ruled that the FAA "requires district courts to compel arbitration of pendent arbitrable claims where one of the parties files a motion to compel. Id. at 217.

In EEOC v. Waffle House, Inc., 534 U.S. 279 (2002), the Supreme Court stated that "[e]mployment contracts, except for those covering workers engaged in transportation, are covered by the [FAA]." (citing Circuit City Stores, Inc. v. Adams, 532 U.S. 105 (2001)).

As the Supreme Court has noted, "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." AT&T Tech., Inc. v. Communications Workers of America, 475 U.S. 643, 648 (1986) (citation omitted). Thus, the first task a court must perform when a party files a motion to compel arbitration "is to determine whether the parties agreed to arbitrate that dispute. The court is to make this determination by applying the 'federal substantive law of arbitrability, applicable to any

-14-

arbitration agreement within the coverage of the [FAA].'" Mitsubishi Motors, 473 U.S. at 626 (quoting Moses H. Cone Memorial Hosp., 460 U.S. at 24). The Supreme Court, however, has also directed federal courts to apply state law to determine whether "generally applicable contract defenses, such as fraud, duress, or unconscionability, may be applied to invalidate arbitration agreements . . . ." Doctor's Assoc., Inc. v. Casarotto, 517 U.S. 681, 687 (1996).

Here, Plaintiffs do not dispute Defendant CFRI's assertion that the arbitration agreements may be subject to the FAA (Docket Entry No. 74 at p. 3). In any event, in light of Adams and Waffle House, the Court concludes that the arbitration agreements at issue are covered by the FAA. Further, the Court also concludes that the dispute between the parties is arbitrable because it relates to "differences...between [an employee] and [CFRI] during, or following, [the employee's] employment with" CFRI.

Plaintiffs argue that because the arbitration provision lacks specifics, it does not meet the requirements of a contract and therefore is unenforceable. While the arbitration provision here is not the model of specificity, other courts have upheld similar provisions, provided that the employee is not forced to share the costs of arbitration. Howell v. Rivergate Toyota, Inc., 144 Fed. Appx. 475, 479 (6th Cir. 2005) (enforcing arbitration agreement under Tennessee law even where employer could later modify the rules of arbitration while invalidating provision on arbitration cost sharing); see also Grant v. Philadelphia Eagles LLC, 2009 WL 1845231, at *3, *5 (E.D. Pa. 2009) (upholding a broad, nonspecific arbitration clause under a highly similar state law contract analysis). When the arbitration is ultimately conducted, it must comply with the Sixth Circuit's precedents that prohibit cost shifting to the employees. The arbitration provision here does not contain any invalid provisions, however. As such, Plaintiffs' objections to arbitration on

-15-

that ground must be rejected.

Plaintiffs also argue that the arbitration clause is unenforceable because it lacks consideration, is an unconscionable provision, lacks mutual assent, and Plaintiffs did not make a knowing and voluntary waiver of their rights. The Sixth Circuit has previously rejected such arguments with highly similar arbitration agreements, however. <u>Howell</u>, 144 Fed. Appx. at 478-81; <u>Mazera v. Varsity Ford Management Services, LLC</u>, 565 F.3d 997, 1001-02 (6th Cir. 2009); <u>see also</u> <u>Seawright v. Am. Gen. Fin. Servs., Inc.</u>, 507 F.3d 967, 972-77 (6th Cir. 2007) (rejecting a series of arguments attacking the enforceability of an employment arbitration provision under Tennessee law). The Court does not see any reason to distinguish those holdings with the facts at issue here. As such, the arbitration provision is enforceable.

As to the procedure that a party seeking to compel arbitration, the FAA provides, in relevant part, as follows:

> A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court...for an order directing that such arbitration proceed in the manner provided for in such agreement. <u>The court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement.</u>

9 U.S.C. § 4 (emphasis added).

In <u>Prima Paint Corp. v. Flood & Conklin Mfg. Co.</u>, 388 U.S. 395 (1967), the Supreme Court held that a court may only consider issues related to the making of the agreement to arbitrate in cases where a party resists arbitration on the grounds that the arbitration agreement is fraudulent.

Under [9 U.S.C. § 4], with respect to a matter within the jurisdiction of the federal

-16-

courts save for the existence of an arbitration clause, the federal court is instructed to order arbitration to proceed once it is satisfied that 'the making of the agreement for arbitration or the failure to comply (with the arbitration agreement) is not in issue.' <u>Accordingly, if the claim is fraud in the inducement of the arbitration clause itself--an issue which goes to the 'making' of the agreement to arbitrate--the federal court may proceed to adjudicate it.  But the statutory language does not permit the federal court to consider claims of fraud in the inducement of the contract generally. Section 4 does not expressly relate to situations like the present in which a stay is sought of a federal action in order that arbitration may proceed . . . .  We hold, therefore, that in passing upon a § 3 application for a stay while the parties arbitrate, a federal court may consider only issues relating to the making and performance of the agreement to arbitrate.</u>  In so concluding, we not only honor the plain meaning of the statute but also the unmistakably clear congressional purpose that the arbitration procedure, when selected by the parties to a contract, be speedy and not subject to delay and obstruction in the courts.

<u>Id.</u> at 403-04 (footnotes omitted & emphasis added).

The Supreme Court has also stated that the FAA "mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." <u>Dean Wittier</u>, 470 U.S. at 218.  Similarly, the Sixth Circuit has stated that under the FAA, "a district court's consideration of a motion to compel arbitration is limited to determining whether the parties entered into a valid agreement to arbitrate, and does not reach the merits of the parties' claims." <u>Burden v. Check into Cash of Ky., LLC</u>, 267 F.3d 483, 487 (6th Cir. 2001) (citing <u>Great W. Mortgage Corp. v. Peacock</u>, 110 F.3d 222, 228 (3d Cir. 1997)).

Under the facts presented here, Plaintiffs, as employees of CFRI, signed the agreement with the arbitration provision as a condition of their employment.  Plaintiffs' claims against CFRI here concern disputes in the course of their employment with CFRI.  Because it is undisputed that Plaintiffs' arbitration agreements are in writing and that Plaintiffs reviewed the agreements, the Court concludes that CFRI's motion to stay and to compel arbitration should be granted.

-17-

## 2. Plaintiffs' Employer Under the FLSA or Title VII

Defendants TCF, Overton, D'Amelio, and Bispo also argue that they are not Plaintiffs' employers under the FLSA or Title VII, and therefore the claims against those Defendants should be dismissed. For the reasons set forth below, the Court agrees and Plaintiffs' claims against those Defendants should be dismissed with prejudice.

TCF is a Delaware corporation with its principal place of business in Calabasas Hills, California. It is a publicly-traded company and the parent corporation of several subsidiary corporations that conduct various businesses, including CFRI, the owner and operator The Cheesecake Factory restaurant chain. It is undisputed that TCF does not directly employ any of the named Plaintiffs or members of the putative class.

Plaintiffs rely on the Sixth Circuit's "integrated enterprise" doctrine to analyze alleged employment relationships in other contexts, including the ADEA, Title VII and the FMLA. In these other contexts, the test for whether a parent corporation may be considered the employer of the employees of a subsidiary corporation is "whether the two entities are so interrelated that they may be considered a 'single employer' or an 'integrated enterprise." Swallows v. Barnes & Noble Book Stores, Inc., 128 F.3d 990 (6th Cir. 1997). "In determining whether to treat two entities as a single employer, courts examine the following four factors: (1) interrelation of operations, i.e., common offices, common record keeping, shared bank accounts and equipment; (2) common management, common directors and boards; (3) centralized control of labor relations and personnel; and (4) common ownership and financial control." Id. at 993-94. "None of these factors is conclusive, and all four need not be met in every case." Id. at 994. However, "[c]ontrol over the elements of labor relations is a central concern." Takacs v. Hahn Automotive, 1999 U.S.

-18-

Dist. LEXIS 21694 (S.D. Ohio 1999). The integrated enterprise analysis "ultimately focuses upon whether the parent corporation was the final decision-maker with regard to the employment issue underlying the litigation." Id. (citing Swallows, 128 F.3d at 995).

TCF does not qualify as an "integrated enterprise" with CFRI under the standards set by the Sixth Circuit. First, TCF and CFRI are separate corporate entities. TCF is a publicly traded company incorporated under the laws of Delaware, while CFRI is a separate corporate entity incorporated under the laws of California. (Docket Entry No. 69, Gardner Declaration at ¶¶ 3, 8). Although Defendants concede that TCF performs certain administrative functions for CFRI, the two companies maintain separate bank accounts, financial records, payroll records, etc. Id. at ¶¶ 10-11. Moreover, CFRI owns and controls all of its own real estate, leases, equipment and supplies. Id. at ¶ 4. Thus, TCF and CFRI do not have "interrelated operations." See Swallows, 128 F.3d at 994; Evans v. McDonald's Corp., 936 F.2d 1087, 1090 (10th Cir. 1991).

Additionally, only CFRI and management employees of CFRI have any direct decisionmaking power over CFRI employees, including servers, such as the power to hire and fire, set work hours and schedules, and approve or adjust time records. (Docket Entry No. 70, Overton Declaration at ¶ 10; Docket Entry No. 71, D'Amelio Declaration at ¶ 10; Docket Entry No. 68, Bispo Declaration at ¶ 10). There is no evidence that TCF is involved in the day-to-day management of CFRI's employees. Plaintiffs have offered no evidence regarding any significant interrelatedness between the two corporate entities beyond bare assertions and CFRI's subsidiary status.

Significantly, Plaintiffs' Second Amended Complaint establishes TCF as a party and describes ownership interests with regard to CFRI, but TCF is not referenced again throughout the

-19-

recitation of the facts underlying this action. With regard to the particular issues in this case, including allegations that particular managers required or encouraged servers to work off the clock, improperly clocked-out employees or modified their time records, and required servers to pay for shortages in violation of company policy, the allegations reflect that only CFRI management employees were involved. Thus, because Plaintiffs have failed to offer any evidence that CFRI and TCF constitute interrelated operations, TCF cannot be considered Plaintiffs' employer in this action. See Evans, 936 F.2d at 1090 (franchisor that stringently controlled the manner of its franchisee's operations, conducted frequent inspections and provided training for franchisee's employees was not an integrated employer with franchisee because it did not control franchisee's day-to-day labor relations). Therefore, Plaintiffs' claims against TCF should be dismissed.

With regard to Defendants Overton, D'Amelio, and Bispo, Plaintiffs' Second Amended Complaint again fails to state sufficient allegations that these Defendants constitute Plaintiffs' "employer" under FLSA or Title VII. Defendants Overton, D'Amelio and Bispo do not directly employ any of the named Plaintiffs or members of the putative class in this case. In the Second Amended Complaint, Plaintiffs describe these Defendants' ownership interests with regard to TCF and their corporate positions within TCF (omitting Defendant Overton's role as CEO of TCF and CFRI), but they are not referenced again throughout the recitation of the facts underlying this action.

The Sixth Circuit employs the "economic realities" test to determine whether an individual may be considered an employer under the FLSA. This test examines whether the individual "has a significant ownership interest in [the corporation that employs the plaintiffs], controls

-20-

significant functions of the business, and determines salaries and makes hiring decisions." United States Dept. of Labor v. Cole Enterprises, 62 F.3d 775, 778 (6th Cir. 1995); Fegley v. Higgins, 19 F.3d 1126 (6th Cir. 1994). The test focuses on whether the individual was the person who made the decisions that allegedly violated the FLSA. Thus, a plaintiff must plead and prove that the individual defendant: (1) was a "corporate officer" of the covered employer; (2) held a "significant ownership interest" in the covered employer; and (3) exercised "operational control of significant aspects of the corporation's day to day functions." Cole Enterprises, 62 F.3d at 778 (citing Dole v. Elliot Travel & Tours, Inc., 942 F.2d 962 (6th Cir. 1991)).

None of the individually named Defendants meets the definition of "employer" under the economic realties test. While Defendants Overton and D'Amelio are corporate officers of both TCF and CFRI, they have no direct ownership interest in CFRI. (Docket Entry No. 70, Overton Declaration at ¶ 4; Docket Entry No. 71, D'Amelio Declaration at ¶¶ 3-4). Defendant Overton's 4.8% ownership interest in TCF does not qualify as "significant" under the case law utilizing this standard. Cole Enterprises, 62 F.3d at 778 (50% shareholder had significant ownership interest); Elliott Travel, 942 F.2d at 966 (50% shareholder had significant ownership interest); Martin v. W.E. Monks & Co., 805 F. Supp. 500, 501 (S.D. Ohio 1992) (75% shareholder had significant ownership interest). Defendants Overton and D'Amelio play no role whatsoever in the employment of servers or any decisions relating to their daily pay and timekeeping. (Docket Entry No. 70, Overton Declaration at ¶ 10; Docket Entry No. 71, D'Amelio Declaration at ¶ 10).

Finally, while Defendant Bispo has oversight responsibilities for corporate and restaurant staff relations issues, she does not have direct involvement the day-to-day operations and supervision of CFRI restaurant employees, including servers. (Docket Entry No. 68, Bispo

-21-

Declaration at ¶ 10). Defendant Bispo has no involvement in any decisions regarding hiring, setting pay, training, setting work hours, assigning work, supervising work, evaluating job performance, determining raises, overseeing and managing time records, approving timesheets and handling payroll. Id. Plaintiffs do not assert in the Second Amended Complaint how Defendants Overton, D'Amelio, and Bispo have worked as Plaintiffs' employers to violate the FLSA or Title VII, and have made only vague and conclusory allegations of their status as employers in their various responses to the motions to dismiss. Therefore, the Court concludes that Defendants Overton, D'Amelio, and Bispo do not qualify as employers under the FLSA or Title VII, and Plaintiffs' claims against those Defendants should be dismissed.

As the Court has found that Plaintiffs' claims against Defendants TCF, Overton, D'Amelio, and Bispo should be dismissed because the Defendants do not constitute Plaintiffs' employer under the FLSA or Title VII, it need not address Defendants' argument that the Court lacks personal jurisdiction over those Defendants.

For the above stated reasons, Defendant CFRI's motion to dismiss or stay to compel arbitration (Docket Entry No. 23) should be granted. Plaintiffs' motion to strike Jennifer Bispo's Declaration (Docket Entry No. 88) should be denied. Defendants TCF's, Overton's, D'Amelio's, and Bispo's motion to dismiss (Docket Entry No. 66) and supplemental motion to dismiss (Docket Entry No. 98) should be granted.

An appropriate Order is filed herewith.

Entered this the 3 day of February, 2010

_____
WILLIAM J. HAYNES, JR.
United States District Judge

-22-