IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

CAMARA SMITH, et al.,                )
                                      )
    Plaintiffs,                       )
                                      )
v.                                    )   No. 3:06-cv-00829
                                      )   Chief Judge Haynes
THE CHEESECAKE FACTORY                )
RESTAURANTS, INC.,                    )
                                      )
    Defendant.                        )

**MEMORANDUM**

Plaintiffs, Camara Smith, Annie Underwood, Stephanie Coleman-Smith, Carly Taylor, Antawyone Owens, Seth Hines, Clare Law, Jennifer Ruffin, Erick Ruffin, Jolene Hostal, Misty Neal, Stephanie Yoakum, David Peltz, Mary Caruso, and Naomi Greenburg (collectively, "Plaintiffs") filed this action on behalf of themselves and all other employees similarly situated under Section 216(b) of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 et seq., and Title VII of the Civil Rights Act of 1964, against the Defendants: The Cheesecake Factory Restaurants, Inc. ("CFRI"), The Cheesecake Factory Incorporated ("TCF"), David Overton, Peter J. D'Amelio and Jennifer G. Bispo (collectively, "Defendants"). Plaintiffs assert claims that Defendants deprived them and others similarly situated of their lawful wages by violating the minimum wage, overtime and record keeping provisions of the FLSA.

On October 19, 2006, the Defendants filed a motion to dismiss and a petition to compel arbitration and stay the proceedings. (Docket Entry No. 23). On February 4, 2010, the Court dismissed Plaintiffs' claims against TCF, Overton, D'Amelio, and Bispo and ordered the remaining

1

parties to arbitrate their disputes with Defendant CFRI in the county and state in which the claimants were employed. (Docket Entry No. 107). The Court also ordered a procedure for arbitrator selection (Docket Entry No. 125), but reserved the question as to whether the parties agreed to class arbitration for resolution by the arbitrator, citing Green Tree Financial Corp. v. Bazzle, 539 U.S. 444, 452-53 (2003).

Before the Court are: Defendant's motion to vacate the arbitration award in the Hines Arbitration (Docket Entry No. 161) and Plaintiffs' motion to dismiss under Fed. R. Civ. P. 12(b)(1) (Docket Entry No. 165). In its motion, Defendant contends, in essence, that the arbitrator exceeded his authority in authorizing collective action arbitration because the Arbitration Agreement between Hines and CFRI is silent as to class or collective arbitration. Defendant cites Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp., __ U.S. __, 130 S. Ct. 1758 (2010), contending that the arbitrator exceeded his authority because Stolt-Nielsen holds that if an arbitration agreement is silent on the issue of class or collective actions, then a party cannot be compelled to submit to class or collective arbitration.

In their motion, Plaintiffs contend, in sum, that: (1) the arbitrator's award is not ripe for judicial review; (2) if the arbitration award were ripe for judicial review, such review is not authorized under the modified JAMS rules that the parties agreed would govern their arbitration proceedings; and (3) a district court cannot second-guess an arbitrator's reasoned judgment. Plaintiff's cite the Sixth Circuit's decision in Dealer Computer Services, Inc. v. Dub Herring Ford, 547 F.3d 558 (6th Cir. 2008) ("DCS I"), where the Sixth Circuit found, upon applying the ripeness factors, that the interim clause construction award is not ripe for review because "the arbitration clause permitted the dealers to pursue class arbitration, but did not conclusively determine that the

dealer's claims should proceed on a classwide basis," (Docket Entry No. 165 at 7). Plaintiff's also assert that this action is analogous to the circumstances in DCS-I in that Claimant Hines "has not yet sought conditional collection action certification and notice and the Arbitrator has made no ruling regarding the suitability of the case for collective arbitration." Id.

### A. Analysis of the Motion

The ruling giving rise to this motion was by Arbitrator Frank S. James III who issued his decision in the matter of Seth Hines and The Cheesecake Factory Restaurants, Inc., No. 301600033612 (the "Hines Arbitration"). Arbitrator James concluded that the Arbitration Agreement permitted collective arbitration. The arbitration clause in the Hines employment agreement provides:

> I recognize that differences may arise between me and the Company during, or following my employment with the Company. I agree to participate in impartial dispute-resolution proceedings as a condition of and as consideration for the offer of employment by the Company. If I, or the Company, determine that the Company's internal procedures for handing claims (including but not limited to, reporting claims to my manager, the Area Director of Operations, the CARELINE, and/or the Staff Relations Department), have not resulted in a mutually acceptable resolution of disputes between me and the Company, I agree to participate in arbitration proceedings.

(Docket Entry No. 25-2, Arbitration Agreement).

In his analysis on the collective arbitration issue, the Arbitrator reasoned as follows:

> Stolt-Nielsen does not require express arbitration clause language permitting collective arbitration in order for a case to proceed as a collective case. Stolt-Nielsen merely held that class arbitration may not be imposed on a party to an arbitration agreement "unless there is a contractual basis for concluding that the party agreed to do so." Further, the Court in Stolt-Nielsen opined that the arbitrator must "identify the rule of law that governs" a situation where the arbitration clause is silent on the issue of class arbitration. Thus, Stolt-Nielsen does not require express contractual language authorizing collective arbitration. Courts have held to that effect. E.g., Fantastic Sam's Franchise Corp. v. FSRO Assoc. Ltd., 683 F.3d 18 (1st Cir. 2012); Sutter v. Oxford Health Plans LLC, 675 F.3d 215 (3d Cir. 2012); Jock v. Sterling Jewelers, Inc., 646 F.3d 113 (2d Cir. 2012), cert denied, 132 S.Ct. 1742 (2012);

> Viches v. The Travelers Cos., Inc., 413 Fed. Appx. 487 (3d Cir. 2011).
>
> Similarly, AT&T Mobility is not germane to the determination of whether this case may proceed on a class or collective basis since the Arbitration Clause contains no express waiver of class or collective claims. In AT&T Mobility, the Supreme Court upheld an express waiver of class claims contained in an arbitration clause notwithstanding a state rule of decision that would have invalidated the waiver, holding that the state rule was preempted by the Federal Arbitration Act, 9 U.S.C. § 1 et seq., the "overarching purpose" of which "is to ensure the enforcement of arbitration agreements according to their terms so as to facilitate streamlined proceedings." 131 S.Ct. 1748.
>
> . . .
>
> The Arbitration Clause does not contain any express language permitting or prohibiting collective arbitration, so I have to ascertain whether the parties intended to permit or prohibit it by applying "ordinary state-law principles" that govern the formation of contracts. First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 944 (1995). Under Alabama law, I must construe a contractual provision to give effect to its "ordinary, plain and natural meaning." Homes of Legend, Inc. v. McCullough, 776 So. 2d 741, 746 (Ala. 2000). The pertinent language in the Arbitration Clause is "I agree to participate in arbitration proceedings." This broad language contains no express prohibition on collective claims, even though it was drafted by a sophisticated legal entity with the ability to obtain legal counsel and foreclose collective claims by including an express waiver of them. Claimant had no ability to negotiate the terms of the Arbitration Clause, which was imposed by Respondent as a condition of Claimant's employment. In the absence of the Arbitration Clause, Claimant would be free to pursue a collective action in court, and the Arbitration Clause neither hinders nor advances Claimant's statutory right to do so. Its "ordinary, plain and natural meaning" is that Claimant may pursue in arbitration the kinds of claims that he could advance in a court o flaw. I find that the Arbitration Clause permits collective claims under the FLSA at the option of either party. I do not see any ambiguity in the relevant language.

(Docket Entry No. 165-2 at 3-6). Plaintiffs note that other arbitrations among other plaintiffs and the Defendant proceed as collective proceedings. (Docket Entry No. 165 at 6, Plaintiffs' Motion to Dismiss).

### B. Conclusions of Law

When Congress implemented the Federal Arbitration Act ("FAA"), Congress established a policy to recognize and enforce arbitration agreements.

4

> The Arbitration Act establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability.

Moses H. Cone Memorial v. Mercury Const. Corp., 460 U.S. 1, 24-25 (1983). As such, there is a strong presumption in favor of the enforcement of arbitration provisions. Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 631 (1985). The Sixth Circuit has held "that courts should play only a limited role in reviewing the decisions of arbitrators." Dawahare v. Spencer, 210 F.3d 666, 669 (6th Cir. 2000).

The Federal Arbitration Act ("FAA") provides that arbitration award may only be set aside or vacated under specific circumstances:

> **(a)** In any of the following cases the United States court in and for the district wherein the award was made may make an order vacating the award upon the application of any party to the arbitration--
>
> > **(1)** where the award was procured by corruption, fraud, or undue means;
> >
> > **(2)** where there was evident partiality or corruption in the arbitrators, or either of them;
> >
> > **(3)** where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or
> >
> > **(4)** where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.
>
> **(b)** If an award is vacated and the time within which the agreement required the award to be made has not expired, the court may, in its discretion, direct a rehearing by the arbitrators.
>
> **(c)** The United States district court for the district wherein an award was made that was issued pursuant to section 580 of title 5 may make an order vacating the award upon the application of a person, other than a party to the arbitration, who is

adversely affected or aggrieved by the award, if the use of arbitration or the award is clearly inconsistent with the factors set forth in section 572 of title 5.

9 U.S.C.A. § 10.

A district court may, in its discretion, vacate an arbitration award if the arbitrator's conduct constitutes "manifest disregard" of application law. Pontiac Trail Med. Clinic, P.C. v. PaineWebber, Inc., No. 9201972, 1993 WL 288301 at *3 (6th Cir. July 29, 1993).

The threshold question is whether Arbitrator James' decision is ripe for judicial review. "The ripeness inquiry is triggered by the fact that the [arbitration award] . . . is not a final arbitration award." Draeger Safety Diagnostics, Inc. v. New Horizon Interlock, Inc., (quoting Dealer Comp. Serv., Inc. v. Dub Herring Ford, 623 F.3d 348, 352 (6th Cir. 2010) ("DCS II") (quoting Dealer Computer Services, Inc. v. Dub Herring Ford, 547 F.3d 558, 561 (6th Cir. 2008) ("DCS I")). "Ripeness is more than a mere procedural question; it is determinative of subject matter jurisdiction. If a claim is unripe, federal courts lack subject matter jurisdiction and the complaint must be dismissed." Bigelow v. Mich. Dept. Of Nat. Res., 970 F.2d 154 (6th Cir. 1992) (citation omitted). "Thus, the doctrine serves as a bar to judicial review whenever a court determines a claim is filed prematurely." DCS I, 547 F.3d at 561. To determine ripeness, the Court should consider:

> (1) the likelihood that the harm alleged by the party will ever come to pass;
>
> (2) the hardship to the parties if judicial relief is denied at this stage in the proceedings; and
>
> (3) whether the factual record is sufficiently developed to produce a fair adjudication of the merits.

DCS I, 547 F.3d at 561.

As to Defendant's principal contentions, in Stolt-Nielsen, the Supreme Court granted certiorari "to decide whether imposing class arbitration on parties who arbitration clauses are 'silent' on that issue is consistent with the FAA." 130 S. Ct. at 1764. There, "[a]fter hearing argument and evidence, including testimony from petitioners' experts regarding arbitration customs and usage in the maritime trade, the arbitrators concluded that the arbitration clause allowed for class arbitration." Id. at 1766. The parties sought judicial review and the district court vacated the award. Id. The Supreme Court noted that the claim was ripe for judicial review:

> Ripeness reflects constitutional considerations that implicate 'Article III limitations on judicial power,' as well as 'prudential reasons for refusing to exercise jurisdiction.' Reno v. Catholic Social Servs., Inc., 509 U.S. 43, 57 n. 18 (1993). In evaluating a claim to determine whether it is ripe for judicial review, we consider both 'the fitness of the issues for judicial decision' and ' the hardship of withholding court consideration.' Nat'l Park Hospitality Assn. v. Dept. of Interior, 538 U.S. 803, 808 (2003). To the extent the dissent believes that the question on which we granted certiorari is constitutionally unripe for review, we disagree. The arbitration panel's award means that the petitioners must not submit to class determination proceedings before arbitrators who, if petitioners are correct, have no authority to require class arbitration absent the parties' agreement to resolve their disputes on that basis. . . . Should petitioners refuse to proceed with what they maintain is essentially an ultra vires proceeding, they would almost certainly be subject to a petition to compel arbitration under 9 U.S.C. § 4. . . . We think it is clear on these facts that petitioners have demonstrated sufficient hardship, and that their question is fit for our review at this time.

Stolt-Nielsen, 130 S. Ct. at 1766 n. 2. In its analysis, the Supreme Court also noted that to obtain a vacatur of the arbitrator's decision, a party "must clear a high hurdle. . . . 'It is only when [an] arbitrator strays from interpretation and application of the agreement and effectively 'dispense[s] his own brand of industrial justice' that his decision may be unenforceable." Id. at 1767.

In DCS I, the Sixth Circuit considered the ripeness issue in determining whether an interim clause construction arbitration award was ripe for judicial review. DCS I, 547 F.3d at 561. The Sixth

7

Circuit concluded that the interim clause construction award was not ripe for review because there was not any likelihood of harm nor hardship.

> We first consider the likelihood the harm alleged by DCS will 'ever come to pass.' When considering a demand for class arbitration, an arbitrator must determine, as a threshold matter, '[w]hether the applicable arbitration clause permits the arbitration to proceed on behalf of or against a class (the 'Clause Construction Award').' In its motion to vacate the Clause Construction Award, DCS argued the arbitration panel erred by interpreting the arbitration clause, found in various agreements between DCS and individual dealerships, not to preclude class arbitration of Dealers' contract claims. By filing this motion, DCS presumably sought to avoid the "harm" of increased time, expense, complexity, and potential liability often associated with the defense against a class proceeding.
>
> Even if these concerns would ordinarily justify judicial review, DCS's motion to vacate remains unripe because the AAA panel's ruling did not conclusively determine that Dealers' claims **should** proceed as a class arbitration. The Clause Construction Award at issue on appeal merely held that the distinct arbitration clauses in the various contracts between DCS and Dealers did not preclude class arbitration. The decision to affirmatively authorize class arbitration under the AAA rules is governed by a separate "Class Determination Award." Dealers can secure a "Class Determination Award" only if they satisfy AAA class certification requirements. . .
>
> . . .
>
> [I]t remains far from certain that the arbitration panel will certify Dealers' claims for class arbitration. If the panel denies class certification, the individual defendants comprising Dealers' putative class will be forced to separately arbitrate their claims against DCS. Therefore, the harm feared by DCS in defending against a class arbitration may never "come to pass." Because DCS's motion to vacate is "anchored in future events that may not occur as anticipated, or at all," the likelihood of harm factor strongly weighs against finding the Clause Construction Award ripe for review. . . .
>
> The Court also considers the hardship DCS will face if judicial review is withheld at this stage of proceedings. When an AAA arbitration panel issues a "Class Determination Award" certifying a matter for class arbitration, the panel must stay proceedings for at least thirty-days to permit a party "to move a court of competent jurisdiction to confirm or vacate the [award]." The stay procedures set forth in Rule 5(d) enable a party to contest an unfavorable decision on class certification in court **before** commencement of class arbitration and resolution of the merits by the arbitration panel. Thus, if the arbitrators in this case ultimately decide to certify Dealers' class, which is no certainty, Rule 5(d) would nonetheless provide DCS ample opportunity to obtain judicial review of any arguments it may have against class arbitration, including those challenging the soundness of the arbitration panel's

8

prior Clause Construction Award. Given this prospective opportunity for judicial review, it does not appear DCS will suffer any material hardship if review is withheld at this preliminary stage of arbitration.

The absence of hardship for DCS at this juncture renders DCS's motion to vacate the sort of premature adjudication the ripeness doctrine seeks to avoid. Indeed, we should remain "reluctant to invite a judicial proceeding every time the arbitrator sneezes."

DCS I, 547 F.3d at 561-63 (citations omitted).

Later, in DCS II, the Sixth Circuit reconciled Stolt-Nielsen and its decision in DCS I:

The facts and procedural posture of the case presented in Stolt-Nielsen are materially indistinguishable from those presented in DCS-I. **Yet, what Stolt-Nielsen found to be ripe, we found not to be ripe. In this respect (i.e., the merits of the ripeness determination), the two decisions may be deemed in conflict. What is important for present purposes, however, is that the two decisions are substantially consistent in their determinations: (1) that an interim arbitration award is subject to judicial review under the FAA, 9 U.S.C. §§ 9 and 10, only if jurisdictional requisites, including ripeness, are otherwise satisfied; and (2) that the ripeness inquiry necessitates evaluation of the hardship posed to the movant in the event immediate judicial review were to be denied.** It is therefore DCS's burden to identify cognizable hardship-under either standard-to establish its entitlement to immediate judicial review of the class determination award.

Considering that the Stolt-Nielsen Court implicitly considered likelihood of harm, along with fitness and hardship, as we did in DCS-I, how are we to understand its different "ripeness" determination? The answer may lie in the nature of the hardship identified by each court and the likelihood that **that** hardship would come to pass. In each case, interestingly, the parties had not expressly argued hardship, so the court had to presume the "asserted" hardship. See Stolt-Nielsen, 130 S.Ct. at 1767 n. 2 (noting that the ripeness issue was not pressed in or considered by the courts below); and *DCS-I*, 547 F.3d at 561 n. 3 (noting that DCS did not address ripeness in its briefs). The Stolt-Nielsen Court presumed that the petitioners sought to vacate the clause construction award to avoid even the expenses associated with participating in preliminary class determination proceedings, irrespective of whether a class was ultimately certified. Id. at 1767 n. 2. **This** hardship, the Court observed, was imminent, its likelihood a certainty.

In contrast, we presumed in DCS-I that DCS "sought to avoid the 'harm' of increased time, expense, complexity, and potential liability often associated with the defense against a class proceeding." DCS-I, 547 F.3d at 561. That is, we presumed that DCS was concerned about expenses and risks that would potentially materialize only if

9

and after the arbitration panel, in a later interim award, "conclusively determine[d] that Dealers' claims **should** proceed as a class arbitration." Id. Because **this** hardship was contingent on "future events that may not occur as anticipated, or at all," we determined that "the likelihood of harm factor strongly weigh[ed] against finding the Clause Construction Award ripe for review." Id. at 562. Further, because DCS would have a prospective opportunity for judicial review if an **unfavorable** class determination award were forthcoming, we concluded that DCS would not "suffer any material hardship if review is withheld at this preliminary stage of arbitration." Id. at 563.

Thus, the difference in the two courts' ripeness determinations may be attributable not to application of two materially different ripeness standards, but to application of two substantially similar ripeness standards to similar but not identical types of hardship whose imminence or likelihood of occurrence was materially different. In light of this analysis, **Stolt-Nielsen does not necessarily undermine the district court's ripeness ruling in this case. Also, in light of this analysis, it becomes apparent that Stolt-Nielsen is not necessarily at odds with our ripeness ruling in DCS-I, but may be distinguishable on the basis of the nature and imminence of the presumed hardship.**

DCS II, 623 F.3d at 356 -357 n. 4 (emphasis added).

The Defendant bears the burden to establish a hardship that reflects that the collective arbitration award in the Hines Arbitration is ripe for judicial review. Here, Defendant initially moved to compel arbitration in this action and now seeks vacatur of the arbitrator's interim ruling for collective arbitration. The collective arbitration in this action has not been certified and thus, the award is not final. Although Defendant "presumably sought to avoid the 'harm' of increased time, expense, complexity, and potential liability often associated with the defense against a class proceeding" the "ruling did not conclusively determine that [Plaintiff's] claims **should** proceed as a class arbitration." DCS I, 547 F.3d at 561. Defendant is not in danger of any material hardship until there is a decision regarding certification of the class. The Court concludes that the Defendant fails to show a hardship that would result if there were not immediate judicial review. Without a showing

of hardship, the Court also concludes that Defendant has not shown a likelihood of harm. As to the provisional ruling, the Court concludes that the factual record is insufficient for a fair decision on the merits. Therefore, the Court concludes that the class construction award is not yet ripe for judicial review by this Court. Given the Court's conclusions on ripeness, the Court declines to address the parties' other contentions.

An appropriate Order is filed herewith.

**ENTERED** this the ___ day of February, 2013.

WILLIAM J. HAYNES, JR.
Chief Judge
United States District Court