IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| **CAMARA SMITH**, *et al.*, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | **Case No. 3:06-cv-00829** |
| ) | **Judge Haynes** |
| **THE CHEESECAKE FACTORY** ) | |
| **RESTAURANTS, INC.**, ) | |
| ) | |
| Defendant. ) | |

**MOTION FOR PARTIAL RECONSIDERATION OF ORDER REFERRING CASE TO ARBITRATION BASED ON INTERVENING CHANGE IN LAW OR, IN THE ALTERNATIVE, MOTION TO VACATE INTERIM AWARD VIII OF ARBITRATOR IRWIN VENICK**

Introduction

On November 5, 2013, the Sixth Circuit Court of Appeals decided *Reed Elsevier v. Crockett,* 734 F.3d 594 (6th Cir. 2013). *Crockett* held definitively that courts, not arbitrators, must decide whether an arbitration agreement that does not expressly waive the right of a claimant to proceed on a class basis nevertheless allows for it. *Id.* at 599. *Crockett* reversed prior Middle District of Tennessee authority to the contrary, and rejected the reading of earlier Supreme Court precedent upon which this Court based its 2010 decision to allow the arbitrators to decide the question of whether the parties' arbitration agreement permits class adjudication. [*See* Memorandum, Doc. 124 at p. 4 ("This issue as to whether the parties agreed to class arbitration is to be resolved by the arbitrator. See Green Tree Financial Corp. v. Bazzle, 539 U.S. 444, 452-45 (2003) (plurality opinion)")]. Consequently, the law in this Circuit now requires the Court, not the arbitrator, to determine whether an arbitration agreement provides for class arbitration.

1

Alternatively, Defendant The Cheesecake Factory Restaurants, Inc. ("CFRI") moves the court under 9 U.S.C § 10 to vacate the decision of Arbitrator Irwin Venick, the arbitrator the Court appointed to preside over the Tennessee arbitration, because he radically exceeded his authority by (a) purporting to interpret an arbitration agreement (the 2009 Agreement) that has never been placed before this Court and that was not the basis of the Court's referral to arbitration and (b) disregarding express language in the 2009 Agreement that states "[t]here shall be no right or authority for any dispute to be brought, heard, or arbitrated as a class, collective or representative basis and the Arbitrator may not consolidate or join the claims of other persons or parties who may be similarly situated." [2009 Arbitration at p. 3, copy attached as **Exhibit 1**]. Even before *Crockett,* an arbitrator confronted with an *express* class action waiver was not permitted to "interpret" such language to permit class arbitration. *Gipson v. Cross Country Bank,* 354 F.Supp.2d 1278, 1286 (M.D. Ala. 2005). *Cf. Johnson v. Long John Silver's Rests.*, 320 F.Supp.2d 656, 668 (M.D. Tenn. 2004)(pre-*Crockett* decision holding arbitrator should decide whether agreement allows class arbitration when agreement is *silent* on the question). *Crockett,* however, clearly stated that the question of class arbitrability is a "gateway matter" for the court to decide, and that an arbitration agreement that "nowhere mentions" class arbitration "does not authorize classwide arbitration." *Id.* at 599. If the Sixth Circuit will not permit an arbitrator to authorize class arbitration when an agreement is *silent* on the issue, it certainly would not do so when the agreement expressly prohibits it. Because Arbitrator Venick has clearly exceeded his authority by forcing parties to an arbitration agreement that was not before him to arbitrate a dispute in a fashion that the agreement expressly prohibits, the Court should vacate his award.

2

Procedural History

On August 24, 2006, five plaintiffs filed a Complaint in this Court against CFRI asserting claims for violation of the Fair Labor Standards Act. [Docket No. 1-1]. On October 19, 2006, CFRI filed a Motion to Dismiss and Petition to Compel Arbitration and Stay Proceedings [Docket No. 23], submitting to the Court the arbitration agreements of the then parties-plaintiff, which were set forth in CFRI's Handbook Receipt and Confidentiality Agreement[1] (the pre-2009 Agreement), all of which were signed between 2003 and 2006. [Docket 25-2]. On February 4, 2010, the Court entered an Opinion and Order granting CFRI's Motion to Compel Arbitration and ordering the Plaintiffs to arbitrate their claims against CFRI as provided for in the pre-2009 Agreement. [Docket No. 106]. The parties were subsequently unable to agree to the procedures for conducting the arbitrations. They then returned to the Court, which issued an additional Order that several arbitrations should proceed "in the county and state in which the individual Plaintiff worked for CFRI with an arbitrator licensed to practice law in that state." [Docket 124 at 4]. In this same Memorandum, the Court cited *Green Tree Financial Corp. v. Bazzle* for the proposition that the "issue as to whether the parties agree to class arbitration is to be resolved by the arbitrator." [*Id.*].

With this guidance, the parties jointly moved the court to appoint specific arbitrators to preside over arbitrations in Tennessee (Docket 127), Ohio (Docket 129), Texas (Docket 133), Colorado (Docket 145), and Alabama (Docket 158).[2] The Court hence appointed the following

---

[1] *See* Memorandum, Docket 124 at 1.
[2] Prior to this order, the Court appointed the Honorable Robert Murrian to serve as the arbitrator over claims asserted by three plaintiffs in Tennessee – Camara Smith, Antawyone Owens, and Stephanie Coleman-Smith; appointed Honorable Richard McQuade to serve as the arbitrator over claims asserted by seven plaintiffs in two counties in Ohio – Misty Neal, Clare Law, Erick Ruffin, and Jennifer Ruffin in Cuyahoga County, OH and David Peltz, Stephanie Yoakum, and Jolene Hostal in Franklin County, OH; appointed the Honorable Allen Butler to serve as the arbitrator over claims asserted by one plaintiff in Texas – Annie Underwood; and appointed the Honorable Steve Briggs to serve as the arbitrator over claims asserted by one plaintiff in Colorado – Mary Caruso.

arbitrators to hear the various arbitrations contemplated by its February 4, 2010 order: (1) by Order dated February 28, 2011, the Court appointed the Honorable Robert Murrian to serve as the arbitrator over the claims asserted by Tennessee plaintiffs Camara Smith, Antawyone Owens and Stephanie Coleman-Smith [Doc. 128]; (2) by Order dated July 15, 2011, the Court appointed the Honorable Richard P. McQuade, to serve as the arbitrator over the claims asserted by Ohio plaintiffs Jolene Hostal, Clare Law, Misty Neal, Erick Ruffin, Jennifer Ruffin, David Peltz and Stephanie Yoakum [Doc. 130]; (3) by Order dated December 9, 2011, the Court appointed Allen Butler to serve as the arbitrator over the claims asserted by Texas plaintiff Annie Underwood [Doc. 137]; (4) by Order dated January 3, 2012, the Court appointed Steve Briggs to serve as the arbitrator over the claims asserted by Colorado plaintiff Mary Caruso [Doc. 151]; and (5) by Order dated April 10, 2012, the Court appointed Frank James to serve as the arbitrator over the claims asserted by Alabama plaintiff Seth Hines [Doc. 159]. Subsequently, Judge Murrian retired from the practice of law and withdrew as Arbitrator. By Order dated December 18, 2012, the Court appointed Irwin Venick to replace Judge Murrian and serve as the arbitrator over the claims of the Tennessee plaintiffs. [Doc. 164].

Mindful of the Court's direction that the arbitrators should determine the question of the arbitrability of class claims, each of the arbitrators appointed by the Court found that the pre-2009 Agreement did not or could not prohibit, and hence authorized, some form of class arbitration.[3] [*See* Interim Award of Robert Murrian, Aug. 16, 2011 (Tennessee), **Exhibit 2**; Award of Richard McQuade, Jr., Nov. 11, 2011 (Ohio), **Exhibit 3**; Steve Briggs, Order Re Collective Action, June 1, 2012 (Colorado), **Exhibit 4**; Allen Butler, Order on Claimant's Motion to Proceed as a Collective Action, July 12, 2012 (Texas), **Exhibit 5**]. In most of these

---

[3]Some Arbitrators, like Murrian and McQuade, concluded that the pre-2009 Agreement was silent on the issue of class/collective actions but, nevertheless, concluded that the arbitrations could proceed on a collective basis. Other Arbitrators concluded that the pre-2009 Agreement permitted collective actions.

4

cases, the Arbitrator also authorized the sending of notice to putative opt-in claimants.[4]

Claimant Camera Smith initiated arbitration proceedings in Tennessee on June 23, 2011 by submitting a Demand for Arbitration to Arbitrator Murrian. [*See* Demand for Arbitration, attached as **Exhibit 6**]. In accordance with the Court's order referring these disputes to arbitration, the Demand referenced only the parties' pre-2009 Agreement. [*Id.* at pp. 49-51]. Nevertheless, the Demand sought a global class of all CFRI servers, without temporal limitations. [*Id.* at p. 4]. On August 23, 2011, CFRI responded to the Demand for Arbitration. Among other defects, CFRI noted that individuals who were parties to the 2009 Agreement had waived their right to proceed in any class or collective proceeding. [Response to Claimant's Demand for Arbitration, attached as **Exhibit 7**, at p. 4]. On August 16, 2011, Arbitrator Murrian issued an Interim Award permitting the matter to proceed conditionally as a collective action. [Interim Award, **Exhibit 2**]. On August 26, 2011, CFRI sought clarification of the time frames of the putative class, and noted that the outside temporal scope of the class must be no later than January 31, 2009, because servers employed after that date were party to a different arbitration agreement—the 2009 Agreement—which, by its terms, expressly proscribed class or collective proceedings and any arbitrator's ability to find otherwise. [Respondent CFRI's Request for Clarification of Interim Award*,* attached as **Exhibit 8**, at pp. 3-6]. On September 21, 2011, Arbitrator Murrian issued Interim Award II, in which he found that because no claimants who were party to the 2009 Agreement had yet sought to join the proceeding, he had "no basis on the present record for excluding from the putative class servers hired after January 31, 2009." [*See* Interim Award II*,* attached as **Exhibit 9**, at p. 3].[5]

---

[4] The exception is in Alabama. Arbitrator Frank James has not yet ruled on whether Claimant Hines has made a showing sufficient to justify the sending of notice to a putative class.

[5] In response to CFRI's Claimant's Request for Clarification, Claimants asserted that the 2009 Agreement was unenforceable for a host of reasons. Noting the absence of a factual record, Arbitrator Murrian did not rule on that

5

Notice then issued and 13 individuals who were party to the 2009 Agreement "opted in" to the Tennessee proceeding. [Interim Award VIII, attached as **Exhibit 10**, at p. 2]. Following discovery, on July 29, 2013, CFRI filed a Motion for Summary Judgment on Claimant's assertion that those who had entered into the 2009 Agreement were eligible to participate in the Tennessee proceeding. [Motion for Summary Judgment, attached as **Exhibit 11**]. On November 12, 2013, despite CFRI's consistent and repeated insistence that the claims of parties to the 2009 Agreement were not arbitrable in the Tennessee proceeding (or any other putative collective action), and despite Arbitrator Murrian's earlier denial of CFRI's motion seeking the exclusion of those who signed the 2009 Agreement from the list of individuals who were to receive notice because he had no "basis on the . . . record to do so," the new arbitrator, Arbitrator Venick, denied CFRI's motion, finding that CFRI's decision to wait to *again* seek exclusion of the 2009 Agreement parties until *after* a record had been created amounted to a waiver of the right to do so. [**Exhibit 10** at pp. 6-10]. He also found that the 2009 Agreement was unenforceable, not on the basis of any interpretation of the contract, but rather upon his legal conclusion that the 2009 Agreement conflicted with the National Labor Relations Act and was otherwise legally "unconscionable and illusory." [*Id.* at pp. 10-16].

## ARGUMENT

I. **THE COURT SHOULD RECONSIDER ITS DECISION AUTHORIZING ARBITRATORS TO DETERMINE WHETHER THE PRE-2009 AGREEMENT PROVIDES FOR CLASSWIDE ARBITRATION AND MAKE THIS DETERMINATION ITSELF.**

On November 16, 2010, this Court cited the Supreme Court's decision in *Bazzle* for the proposition that the question of whether an agreement that did not contain an express class action waiver allowed for class actions "is to be resolved by the arbitrator." [Docket 124 at 4]. At the

---

issue but instead stated that "the question of enforceability cannot be determined in a vacuum." *Id.*

6

time, this was neither a surprising nor novel conclusion. Earlier cases in the Middle District of Tennessee had held precisely the same. *Johnson v. Long John Silver's Rests., Inc.,* 320 F.Supp.2d 656, 668 (M.D. Tenn. 2004)(citing *Bazzle* for the proposition that arbitrator, not court, should determine whether arbitration provision lacking express class action waiver authorized class proceedings). However, on November 5, 2013, the Sixth Circuit rejected the conclusion that *Bazzle* controls this question. Noting that subsequent Supreme Court decisions have "pointedly observed" that *Bazzle* was decided by "only a plurality," the Sixth Circuit characterized the Supreme Court as "giv[ing] every indication . . . that classwide arbitrability is a gateway question." *Crockett,* 734 F.3d at 598. Impliedly overturning *Johnson,* the Circuit then starkly held that that the question of classwide arbitration was a gateway "arbitrability" question that was "reserved for judicial determination unless the parties clearly and unmistakably provide otherwise."[6] *Crockett,* 734 F.3d at 599 (quotation omitted).

The law in this District and Circuit has, therefore, changed since the Court relied on a contrary reading of *Bazzle* to refer the classwide arbitrability question to the arbitrators. Of course, because that order did not constitute a final resolution of the parties' disputes, it was interlocutory in nature. Courts have both the inherent power and the specific authority under Federal Rule of Civil Procedure 54(b) to revise an interlocutory order when there has been "an intervening change in controlling law." *Abadeer v. Tyson Foods, Inc.,* ___ F.Supp.2d ___, 2013 WL 5498190 at *21 (M.D. Tenn. Oct. 3, 2013), copy attached as **Exhibit 12**. Because *Crockett* constitutes a significant change in the controlling law, this Court should modify its referral of

---

[6]Arguing the question of classwide arbitrability to an arbitrator does not constitute evidence of "clearly and unmistakably providing otherwise." The *Crockett* court cited *First Options v. Kaplan,* 541 U.S. 938 (1995), for the proposition that an arbitrator may decide this question only if the parties authorized the arbitrator to do so. In *Kaplan,* the Supreme Court noted that "arguing the arbitrability issue to an arbitrator does not indicate a clear willingness to arbitrate that issue, *i.e.,* a willingness to be effectively bound by the arbitrator's decision on that point." 541 U.S. at 946.

7

these matters to arbitration to rule on the question of classwide arbitrability itself.[7]

## II. *CROCKETT* REQUIRES THE COURT TO HOLD THAT THE PRE-2009 AGREEMENT PROHIBITS CLASSWIDE ARBITRATION.

Once this Court assumes jurisdiction over the question of classwide arbitrability, it will readily conclude that the pre-2009 agreement upon which this controversy centers does not authorize class arbitration.

The pre-2009 agreement reads as follows:

> I recognize that differences may arise *between me and the Company* during, or following, my employment with the Company. *I agree* to participate in impartial dispute-resolution proceedings as a condition of and as consideration for the offer of employment by the Company. If I, or the Company, determine that the Company's internal procedures for handling claims (including, but not limited to, reporting claims to my manger, the Area Director of Operations, the CARELINE, and/or the Staff Relations Department), have not resulted in mutually acceptable resolution of disputes *between me and the Company*, I agree to participate in arbitration proceedings.

[Pre-2009 Agreement, attached as **Exhibit 13** (emphasis supplied)]. The Agreement is silent on the question of class arbitration.

As in *Crockett*, the Court should find that this language does not authorize class arbitration for two reasons. "The principal reason to conclude that this arbitration clause do not authorize classwide arbitration is that the clause nowhere mentions it." *Crockett*, 734 F.3d at 599. Second, the clause at issue here—like that at issue in *Crockett*—is limited to the disputes

---

[7] If history is any indicator, Claimants may contend that CFRI "waived" its right to have this Court decide the question of classwide arbitrability by participating in the various arbitrations. Of course, arguing the question of arbitrability to an arbitrator does not indicate a willingness to be bound by that arbitrator's decision. *Kaplan*, 514 U.S. at 946. Equally importantly, however, CFRI cannot have "waived" the right to have this Court decide the class arbitrability question when such a "right" was not available at the time that the court referred this question to the arbitrator. "Waiver . . . requires an 'intentional relinquishment of a known right.'" *Apponi v. Sunshine Biscuits, Inc.,* 809 F.2d 1210, 1217 (6th Cir. 1987). And the failure to raise a legal issue "prior to the announcement of a [court] decision which might support it cannot prevent a litigant from later invoking such a ground." *Curtis Publ. Co. v. Butts,* 388 U.S. 130, 142-45 (1967). *See also Hawknes, Ltd. v. Overseas Shipping Agencies,* 590F.3d 87, 92 (2d Cir. 2009). Very simply, in 2010, the law in this District was that arbitrators, not courts, must decide questions of class arbitrability when the agreement does not expressly address class proceedings. That law changed on November 5, 2013 when the Circuit issued *Crockett*. CFRI could not have waived a right in 2010 that did not exist until 2013. *Id.*

between the two parties to the agreement, not others. The arbitration agreement language at issue in *Crockett* stated "any controversy, claim or counterclaim . . . arising out of or in connect with this Order [for Lexis services] . . . will be resolved by binding arbitration." *Id.* The *Crockett* court noted this language limited the scope of the arbitration provisions to "claims 'arising from in in connection with *this* Order,' as opposed to other customers' orders." *Id.* Similarly, the arbitration provision at issue here provides for arbitration of disputes "between me and the company," not disputes of other employees.

The arbitration provisions at issue in this matter and in *Crockett* are remarkably similar. Neither mentions class arbitration, and hence excludes it. And both limit their scope to disputes arising between parties to the agreement, not to other persons. The Court should grant CFRI's motion and revise its referral of these disputes to permit only individual arbitrations.

**III. ALTERNATIVELY, IF THE COURT DECLINES TO RECONSIDER IN PART ITS ORDER TO ARBITRATE CLAIMS UNDER THE PRE-2009 AGREEMENT, IT SHOULD VACATE ARBITRATOR VENICK'S INTERIM AWARD AUTHORIZING CLASS ARBITRATION FOR PARTIES TO THE 2009 AGREEMENT.**

Arbitrator Venick exceeded his authority by considering an arbitration provision that was not before him and by ignoring the express language of the Agreement, which prescribed the authority of *any* arbitrator, much less one who had not been engaged to hear a dispute arising under it, to find that the Agreement permitted classwide arbitration. Because the arbitrator grossly exceeded his authority, this Court should vacate his Interim Award.

The Federal Arbitration Act ("FAA") provides, in pertinent part:

(a) In any of the following cases the United States court in and for the district wherein the award was made *may make an order vacating the award* upon the application of any party to the arbitration-

 (4) *Where the arbitrators exceeded their powers. . . .*

9

9 U.S.C § 10 (emphasis added); *see also NCR Corp. v. Sac-Co., Inc.,* 43 F.3d 1076 (6th Cir. 1995). When vacating awards under Section 10(a)(4) of the FAA because arbitrators exceeded their powers, courts have generally found that arbitrators acted "contrary to express contractual provisions." *Rain CII Carbon, LLC v. ConocoPhillips Co.,* 674 F.3d 469, 472 (5th Cir.2012). Where, as here, an arbitrator has been appointed by a court, "[a]rbitrators . . . cannot inflate their authority beyond the boundaries of the . . . courts' orders of reference [because they] derive . . . their powers from the . . . court's order." *Gipson v. Cross Country Bank,* 354 F.Supp.2d 1278, 1289 (M.D. Ala. 2005)(ellipses and brackets in original)(citation omitted). Additionally, a court may vacate an award if the conduct of the arbitrator constitutes "'manifest disregard'" of applicable law. *Pontiac Trail Medical Clinic, P.C. v. PaineWebber, Inc.,* 1993 WL 288301, at *3 (6th Cir. 1993)(quoting *National R.R. Passenger Corp. v. Chesapeake & Ohio Ry. Co.,* 551 F.2d 136, 141-42 (7th Cir.1977)), copy attached as **Exhibit 14**. And a court will find that an arbitrator exceeded his authority when the arbitrator does not base his award on the contract, but upon "some body of thought, or feeling, or policy or law that is outside the contract." *Neshgold LP v. New York Hotel Trades Council, AFL-CIO,* 2013 WL 5298332 (S.D.N.Y. Sept. 19, 2013), copy attached as **Exhibit 15**.

### A. The Arbitrator Did Not Have Authority To Hear Claims Asserted by Parties to the 2009 Agreement.

Arbitrator Venick was appointed by the Court to hear the claims of Camera Smith, Stephanie Coleman-Smith, and Antawyone Owens, all of whom were party to the *pre-2009* Agreement. [*See* Exhibit A, pp. 2-5, and Exhibit E to Demand for Arbitration, attached hereto as **Exhibit 6**]. He was not tasked with deciding any dispute between parties to the 2009 Agreement (which has never been before this Court). Arbitrators do not have authority "beyond the boundaries" of the court's referral order. *Gipson,* 354 F.Supp.2d at 1289. Yet Arbitrator Venick

10

went well beyond the Court's referral order by considering claims made by parties to the 2009 Agreement. Indeed, on the first page of his Interim Award, the arbitrator acknowledges that it was the *pre-2009* Agreement, not the 2009 Agreement "upon which this action was referred for arbitration. [Interim Award VIII, attached as **Exhibit 10**, at p. 1]. Because the arbitrator had no power to "enlarge upon" the scope of the court's referral, the Court should vacate his award. *Gipson,* 354 F.Supp.2d at 1289.

Even if the Court were to ignore the scope of its referral order, it would be compelled to vacate the Interim Award for two reasons. First, even before *Crockett,* the law imposed upon courts, not arbitrators the obligation to determine whether an arbitration agreement was valid and enforceable. *Crockett,* 734 F.3d at 597. But even if that were not the case (and it plainly is), the 2009 Agreement removes from the province of the arbitrator "any disputes concerning the validity or enforceability of this Agreement." [2009 Agreement, attached as **Exhibit 1**, at p. 3].

Second, it has long been the case that an arbitrator may not "interpret" an express prohibition against class arbitration to allow for it. *Gipson,* 354 F.Supp.2d at 1286 (no need for arbitrator to decide whether a contract that forbids class arbitration allows it, because such an agreement "expressly and unequivocally" prohibits it.). *See also Johnson,* 320 F.Supp.2d at 668 (pre-*Crockett* decision holding that arbitrator may decide class arbitrability issue when agreement silent as to class arbitration). The 2009 Agreement says in relevant part:

> There shall be no right or authority for any dispute to be brought, heard or arbitrated as a class, collective or representative basis and the Arbitrator may not consolidate or join the claims of other persons or parties who may be similarly situated.

[**Exhibit 1** at p. 3]. As in *Gipson,* the 2009 Agreement does not leave any room for "interpretation," and, indeed, the arbitrator's authority is expressly limited to *exclude* the ability to order that parties to the 2009 Agreement participate in class arbitration. The "overarching

11

purpose" of the Federal Arbitration Act "is to ensure the enforcement of arbitration agreements according to their terms. . . ." *AT&T Mobility LLC v. Concepcion,* 131 S. Ct. 1740, 1748 (2011). Parties may structure their arbitration agreements to limit with whom they will arbitrate, *id.* at 1749, and arbitrators obtain "authority to resolve disputes only because the parties have agreed in advance to submit such grievances to arbitration." *AT&T Techs., Inc., v. Commc'n Workers of Am.,* 475 U.S. 643, 648-49 (1986). Very simply, CFRI never agreed to arbitrate the claims of parties to the 2009 Agreement in a class or collective proceeding, and Arbitrator Venick had no power to order it to do so. The Court should vacate Arbitrator Venick's interim award and find that parties to the 2009 Agreement may not participate in any class proceeding.[8]

### B. The Court Should Vacate Arbitrator Venick's Award Because He Based His Award on Extra-Contractual Concepts That Lacked Merit as a Matter of Law.

Arbitrator Venick had no authority whatsoever to compel CFRI to submit to class arbitration of claims asserted by parties to the 2009 Agreement because courts, not arbitrators, make class arbitrability determinations and, regardless, the arbitrator's authority arose only from the *pre*-2009 Agreement and the court's referral of claims arising under that agreement. Nor did he make any pretense of interpreting the 2009 Agreement. Instead, he considered other principles of law and concluded, under these extra-contractual principles, that the 2009 Agreement was invalid and unenforceable. This was not the arbitrator's decision to make.

Questions of whether an agreement is valid are for the *court,* not the arbitrator, to decide. *Crockett,* 734 F.3d at 597. An arbitrator who bases his award not on the language of the contract, but rather upon "some body of thought, or feeling, or policy, or law that is outside the

---

[8] In the wake of *Crockett,* whether an arbitration provision allows for class arbitration is a "gateway matter" that is decided by the court *before* the arbitrator proceeds to "subsidiary questions," like waiver. *Crockett,* 734 F.3d at 597. Here, Arbitrator Venick concluded (wrongly) that CFRI had "waived" its ability to enforce the 2009 agreement against parties to that agreement who joined the Tennessee arbitration. But those parties never should have entered the arbitrability gate, and the arbitrator should have never reached the manifestly *subsidiary* question of waiver.

12

Case 3:06-cv-00829   Document 181   Filed 01/15/14   Page 12 of 20 PageID #: 2892

contract" has "exceeded his authority." *Neshgold LP,* 2013 5298332 at *6. And while the Court need not do so to vacate the arbitrator's award, even a cursory assessment of the extra-contractual grounds the arbitrator employed to "invalidate" the 2009 Agreement illustrates that his decision was in "manifest disregard of the law."

### 1. CFRI Did Not "Waive" the Right to Contest the Arbitrability of Claims Asserted by Parties to the 2009 Agreement.

Camera Smith, a party to the pre-2009 agreement, submitted a Demand for Arbitration seeking a class unbound by time in June 2011. In August 2011, CFRI answered the Demand with its Response, noting in that initial pleading that the arbitrator could not join the claims of parties to the 2009 Agreement in that arbitration. [Response to Demand for Arbitration, attached as **Exhibit 7**]. On August 26, 2011, CFRI responded to Arbitrator Murrian's Interim Award authorizing class arbitration by seeking clarification that it did *not* reach those who were party to the 2009 Agreement. [Request for Clarification of Interim Award, attached as **Exhibit 8**]. The arbitrator then issued his Interim Award II, in which he deferred ruling on whether parties to the 2009 Agreement could participate in the arbitration because he had "no basis on the present record for excluding from the putative class" those who were parties to the later agreement. [Interim Award II, attached as **Exhibit 9**]. Consequently, CFRI engaged in discovery. After it had done so, it timely sought summary judgment on the claims of those opt-in Claimants who were party to the 2009 Agreement, again noting that the claims of those parties were not arbitrable in a class proceeding. [Motion for Summary Judgment, attached as **Exhibit 11**]. This is perfectly ordinary litigation conduct and was consistent with Arbitrator Murrian's direction. It does not, as Arbitrator Venick found, constitute a "waiver" of CFRI's right to object to the arbitrabilty the claims of those who were party to the 2009 Agreement.

"Wavier, as defined by federal common law, requires an 'intentional relinquishment of a

13

known right.'" *Apponi v. Sunshine Biscuits, Inc.,* 809 F.2d 1210, 1217 (6th Cir. 1987) (citation omitted). *See also Productive MD, LLC v. Aetna Health,* 2013 WL 4587859 (M.D. Tenn. Aug. 28, 2013), copy attached as **Exhibit 16**. To establish waiver of a defense that a defendant has asserted in its initial pleading, the claimant must show be a "*clear, unequivocal, and decisive act* of the party showing such a purpose, or acts amounting to an estoppel on his part." *Tangradi v. Baptist Memr'l Hosp. of Union City,* 2012 WL 2681806 (W.D. Tenn. July 6, 2012)(rejecting claim of waiver when defendant raised defense in answer and sought summary judgment within court-ordered time frame to do so)(citation omitted) [copy attached as **Exhibit 17**].

Shortly after Plaintiff Smith initiated arbitration proceedings, CFRI sought an order of the arbitrator excluding parties to the 2009 Agreement from the Arbitration. As CFRI argued in a motion filed August 26, 2011:

> [S]ervers hired in Tennessee by CFRI on or after February 1, 2009, have expressly agreed that their claims against CFRI cannot be arbitrated on a class, collective, or representative basis. Pursuant to the Supreme Court's decisions in *Stolt-Nielsen S.A.* and *AT&T Mobility,* these arbitration agreements must be enforced according to their terms. Based on this express waiver, servers hired to work at the Nashville, Tennessee restaurant during the period February 2009 to the present cannot be part of the conditional collective class in this proceeding.

[Request for Clarification of Interim Award, attached as **Exhibit 8**]. Arbitrator Murrian denied this motion, writing that this issue "cannot be determined in a vacuum" and holding that "factual issues remain as to whether servers hired after January 31, 2009 signed the "Mutual Agreement to Arbitrate Claims." [Interim Award II, attached as **Exhibit 9**, at pp. 2-3]. He therefore ordered that discovery occur before finally deciding the issue.

In other words, CFRI preserved its opposition to the arbitrability of claims brought by parties to the 2009 Agreement in its responsive pleading, sought by motion to exclude such parties from the proceeding as soon as it was able to do so, and, when the (first) arbitrator ruled

14

that the issue could not be decided upon without the benefit of discovery to identify who had, in fact, signed the 2009 Agreement, *engaged* in that discovery. It then filed a Motion for Summary Judgment as to the opt-in claimants who signed the 2009 Agreement. This is not "clear and unmistakable" evidence that CFRI intended to abandon its arbitrability defense—it is the conduct of a prudent litigant. Because the arbitrator's finding to the contrary—which he had no authority to make—constitutes a manifest, if not shocking, disregard of law, the Court should vacate his award.

### 2. Express Collective Action Waivers Do Not Contravene the NLRA.

Relying on *In re D.R. Horton*, and other unrelated precedent, Arbitrator Venick concluded that the express collective action waiver contained in the 2009 Agreement was unenforceable as a violation of the NLRA's provisions relating to protected, concerted activity. [Interim Award VIII, attached as **Exhibit 10**]. Since Arbitrator Venick issued his decision, the NLRB's decision in *D.R. Horton* with respect to this issue has been overturned by the Fifth Circuit Court of Appeals – which decision is in line with the many, many courts from other jurisdictions that had rejected the NLRB's position on the issue.

On December 3, 2013, the Fifth Circuit held that the NLRB's decision in *D.R. Horton* violated the Federal Arbitration Act. In doing so, the Court held that class/collective action waivers in arbitration agreements between employers and employees do not violate the NLRA and are enforceable. ___ F.3d ___, 2013 WL 6231617 at **13-14 (5th Cir. Dec. 3, 2013) [copy attached as **Exhibit 18**]. This decision was in line with other recent case law on the subject. As the Eighth Circuit recently noted, "nearly all of the district courts to consider the decision have declined to follow it." *Owen v. Bristol Care, Inc.*, 702 F.3d 1050, 1054 n.1 (8th Cir. 2013). *See also Morris v. Ernst & Young LLP*, 2013 WL 3460052 (N.D. Cal. Jul 9, 2013) [copy attached as

15

**Exhibit 19**]; *Spears v. Mid-America Waffles, Inc.*, 2012 WL 2568157 (D.Kan. Jul 2, 2012) [copy attached as **Exhibit 20**]; *De Oliveira v. Citicorp North America, Inc.*, 2012 WL 1831230 (M.D. Fla. May 18, 2012) [copy attached as **Exhibit 21**]; *Morvant v. P.F. Chang's China Bistro, Inc.*, 2012 WL 1604851 (N.D. Cal. May 7, 2012) [copy attached as **Exhibit 22**]; *Jasso v. Money Mart Exp., Inc.*, 2012 WL 1309171 (N.D. Cal. Apr. 13, 2012) [copy attached as **Exhibit 23**]; *Palmer v. Convergys Corp.*, 2012 WL 425256, *3 (M.D. Ga., Feb. 9, 2012) [copy attached as **Exhibit 24**]; *Sanders v. Swift Transp. Co. of Arizona, LLC*, 843 F. Supp. 2d 1033, 2012 WL 523527, *3 (N.D. Cal. Jan. 17, 2012) [copy attached as **Exhibit 25**]; *LaVoice v. UBS Fin. Servs., Inc.*, 2012 WL 124590, *6 (S.D.N.Y. Jan. 13, 2012) [copy attached as **Exhibit 26**]; *Iskanian v. CLS Transp. Los Angeles, LLC*, 142 Cal. Rptr. 3d 372 (Cal. App. 2 Dist. Jun. 4, 2012); *Brown v. Trueblue, Inc.*, 2012 WL 1268644 (M.D.Pa. Apr. 16, 2012) [copy attached as **Exhibit 27**].

The express class/collective action waiver contained in the 2009 Agreement is enforceable and does not violate the NLRA.

### 3. The Agreement Is Not "Void" Because the Pending Litigation Was Not Disclosed to Putative Class Members.

Arbitrator Venick properly rejected Smith's contention that the 2009 Agreement was unenforceable because CFRI failed to notify each new hire who signed the agreement about this pending litigation. However, the arbitrator did conclude that the 2009 Agreement could not be enforced against individuals who were employed with CFRI prior to the implementation of the 2009 Agreement, who left the company then signed the 2009 Agreement upon rehire. Arbitrator Venick concluded that, as to those rehired individuals, CFRI should have notified them of this lawsuit before having them sign the 2009 Agreement – on the theory that they may have been members of an as-yet unidentified putative class. Arbitrator Venick did not cite to any authority for this extra-contractual conclusion. Indeed, there is none.

16

The only case law on the subject involves situations in which those asked to sign a class/collective waiver already were plaintiffs in a pending litigation, like *Balasanyan v. Nordstrom, Inc.*, 2012 WL 760566, **2-4 (S.D. Cal., Mar. 8, 2012) [copy attached as **Exhibit 28**], or were putative class members for a case in which a motion for certification was pending when the employer implemented the new agreement and appeared to constitute an unauthorized effort to communicate with the putative class members about the litigation, like *Williams v. Securitas Sec. Services USA, Inc.*, 2011 WL 2713741, *2 (E.D. Pa., July 11, 2011) [copy attached as **Exhibit 29**].

All cases to have addressed the issue have upheld class/collective waivers against individuals who were not putative class members at the time they signed the waiver. *See In re Currency Conversion Fee Antitrust Litigation*, 361 F.Supp.2d 237, 258 (S.D.N.Y. 2005):

> Chase and Citibank seek clarification whether this Court's ruling encompasses three categories of cardholders: (1) ***cardholders who opened new credit card accounts after this suit began***, (2) cardholders who first became cardholders due to account acquisitions after this litigation began, and (3) cardholders whose first foreign exchange transaction on their credit card occurred after the addition of the arbitration clause to their card agreement. Plaintiffs oppose defendants' request for clarification, arguing that "allowing defendants to use arbitration agreements imposed during litigation to prevent additional cardholders injured by ongoing antitrust violations from participating in this action would alter the status of the litigation and interfere with this Court's jurisdiction over this controversy."
>
> ***When arbitration clauses were included in the credit card agreements for these categories of cardholders, they were not putative class members. As a result, they had no rights in this litigation.*** Indeed, this Court agrees with defendants that there is no basis for restricting a defendant from communicating with persons who are not putative class members. *Cf. Kahan,* 424 F.2d at 169 (noting that a putative class members' rights in a litigation are protected as of the filing date of the complaint). Accordingly, this Court holds that ***because the non-putative class members agreed to arbitration before they became putative class members***

> *in this litigation, the arbitration clauses in their cardholder agreements can be enforced. Because these cardholders' rights were hypothetical at the time the arbitration clauses were added, that change did not alter the status of the pending litigation*.

*Id.* (emphasis added).

Here, Arbitrator Venick agreed that this case law supported CFRI's position that it had no obligation to notify new hires of any pending FLSA litigation. At the time of their hire, they had no claims against CFRI and were not putative class members (even if a conditional certification motion had been pending). Under this law, Arbitrator Venick should have concluded that the 2009 Agreements were enforceable as to Charles DePriest and David Michiels. Arbitrator Venick incorrectly held that these individuals had previously worked for CFRI, left the company, then signed the 2009 Agreement upon rehire. In fact, DePriest and Michiels were only employed by CFRI one time, and both signed the 2009 Agreement upon hire. At that point in time, they had no potential claims against CFRI and could not have been part of any putative class unless and until they started working for CFRI and, allegedly, experienced FLSA violations. Thus, Arbitrator Venick's conclusions about the enforceability of the class/collective waiver as to newly hired employees should have been applied to DePriest and Michiels.

## IV. Conclusion

*Crockett* changed the law in the 6th Circuit. In this Circuit, the question of whether an arbitration provision provides for the arbitration of class claims must now be decided by the court as a gateway question. This change in the law requires the Court to revisit its earlier, interlocutory finding to the contrary.

Alternatively, and minimally, the Court should vacate Arbitrator Venick's award regarding the claims of employees who signed the 2009 Agreement, an agreement that was never

18

before him and that clearly states that he had no authority to hear claims of parties to the agreement in any class or collective proceeding. And because he had no authority to consider the claims of parties to the 2009 Agreement, he had no authority to consider "subsidiary" questions, such as waiver. The Court should vacate the Arbitrator's award to the contrary.

Submitted January 15, 2014.

Respectfully submitted,

s/ Keith D. Frazier
Keith D. Frazier (TN BPR No. 012413)
Elizabeth S. Washko (TN BPR No. 019931)
Wendy V. Miller (TN BPR No. 23500)
Ogletree, Deakins, Nash,
Smoak & Stewart, P.C.
401 Commerce Street, Suite 1200
Nashville, Tennessee 37219
Telephone: (615) 254-1900
Facsimile: (615) 254-1908
keith.frazier@ogletreedeakins.com
liz.washko@ogletreedeakins.com
wendy.miller@ogletreedeakins.com

Attorneys for Defendant

**CERTIFICATE OF SERVICE**

   I hereby certify that on January 15, 2014, the foregoing was filed electronically with the Clerk of Court to be served by operation of the Court's electronic filing system upon the following:

Charles P. Yezbak, III, Esq.
2002 Richard Jones Road, Suite B200
Nashville, TN 37215

David Borgen, Esq.
Goldstein, Borgen, Dardarian & Ho
300 Lakeside Drive, Suite 1000
Oakland, CA 94612

             s/ Keith D. Frazier

16645673.2